UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
RAHEEL AHMER GHAFAR,

Plaintiff,

-against-

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES *et al.*,

Defendants.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-6698 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On December 4, 2025, *pro se* plaintiff Raheel Ahmer Ghafar ("Plaintiff") commenced this immigration mandamus action against defendants United States Citizenship and Immigration Services ("USCIS"), Joseph B. Edlow, in his official capacity as USCIS Director, Pamela Bondi, in her official capacity as Attorney General of the United States, Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security, and Joseph Nocella, Jr., in his official capacity as U.S. Attorney for the Eastern District of New York (collectively, "Defendants").[1] *See* Petition for Writ of Mandamus, Dkt. 1 ("Complaint" or "Compl."). Plaintiff seeks a writ of mandamus compelling Defendants to adjudicate his Form I-130, Petition for Alien Relative ("Form I-130"), submitted on June 6, 2025, and a declaration that Defendants' delay in processing his Form I-130 is unreasonable and contrary to law pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06; Mandamus Act, 28 U.S.C. § 1361; and 8 U.S.C. § 1571(b). Compl. at 2-3, 5.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of the U.S. Department of Homeland Security Markwayne Mullin and Acting Attorney General Todd Blanche are substituted as parties for former Secretary of the U.S. Department of Homeland Security Kristi Noem and former Attorney General of the United States Pamela Bondi. Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

Before the Court is Defendants' fully briefed motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of subject-matter jurisdiction and 12(b)(6) ("Rule 12(b)(6)") for failure to state claims upon which relief can be granted,[2] as well as Plaintiff's motion for reconsideration of the Court's June 12, 2026, order denying Plaintiff leave to file a third factual supplement in further support of his opposition to Defendants' Motion to Dismiss.[3] For the following reasons, Defendants' Motion to Dismiss is granted, and Plaintiff's Motion for Reconsideration is denied.

## BACKGROUND

### A. Statutory Framework

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, a foreign individual may not enter and permanently live in the United States without a visa. *See Kerry v. Din*, 576 U.S. 86, 89 (2015) (plurality opinion). The INA creates a special visa process for foreign individuals sponsored by "immediate relatives" in the United States, *id.* (quoting 8 U.S.C. §§ 1151(b), 1153(a)), in which a U.S. citizen first files a petition on behalf of the foreign individual living abroad, asking to have that individual classified as an "immediate relative." *Id.* (citing 8 U.S.C. §§ 1153(f), 1154(a)(1)). Once a Form I-130 is filed, USCIS must investigate the facts underlying the petition. *See* 8 U.S.C. § 1154(b). If that petition is approved, the foreign individual may then apply for a visa by submitting the required documents and appearing at a U.S. embassy or consulate for an interview. *Din*, 576 U.S. at 89 (citing 8 U.S.C. §§ 1201(a)(1), 1202).

---

[2] *See* Notice of Motion, Dkt. 23 ("Motion to Dismiss"); Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, Dkt. 23-1 ("Defs.' Mem."); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Dkt. 24 ("Pl.'s Opp'n"); Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, Dkt. 25 ("Defs.' Reply").

[3] *See* Plaintiff's Motion for Reconsideration of the June 12, 2026, Order, Leave to File a Narrow Supplemental Declaration, and Expedited Consideration of the Pending Motion to Dismiss, Dkt. 39 ("Motion for Reconsideration"). When citing the Motion for Reconsideration, the Court refers to the page numbers contained in the automatically generated ECF header.

### B. Plaintiff's Form I-130

Plaintiff is a United States citizen, residing in Staten Island, New York. Compl. at 2. He filed his Form I-130, on behalf of his wife, a foreign citizen, on June 6, 2025. *Id.* at 3; Pl.'s Opp'n at 5. USCIS issued an Account Access Notice on June 24, 2025, indicating receipt of his submission and providing him instructions and information regarding how to access his case information online. Declaration of Allan DeBoer ¶ 10, Dkt. 23-2 ("DeBoer Declaration" or "DeBoer Decl.").

Since then, Plaintiff has "made inquiries into the status of his case and requested expeditious processing of the Form I-130," *id.* ¶ 11, in a variety of ways, including by, for example, submitting "urgent humanitarian expedite requests" and letters seeking assistance from Senator Chuck Schumer, Representative Nicole Malliotakis, the USCIS Ombudsman, USCIS officers, and via FOIA requests, Compl. at 3; *see* Compl. at 3-4; *see also* DeBoer Decl. ¶¶ 11-12.

### C. Procedural History

On December 4, 2025, Plaintiff commenced this action, seeking a writ of mandamus compelling Defendants to adjudicate his Form I-130, a declaration that Defendants' delay in processing his Form I-130 has been unreasonable and contrary to law, costs, and any other relief that the Court deems just and proper. *See* Complaint at 5.

The Court directed Defendants to show cause by January 7, 2026, why a writ of mandamus should not be issued, *see* Order to Show Cause, Dec. 8, 2025, and on January 7, 2026, Defendants filed responsive papers, *see* Letter from Defendants to the Court (Jan. 7, 2026), Dkt. 7; Declaration of Service, Dkt. 8, which Plaintiff opposed on February 4, 2026, *see* Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkt. 9.

Construing the parties' responses as a request for a pre-motion conference on an anticipated motion to dismiss, the Court set a briefing schedule on Defendants' anticipated motion to dismiss.

*See* Order, dated Feb. 5, 2026. Consistent with that briefing schedule, Defendants' Motion to Dismiss was fully briefed on April 16, 2026. *See generally* Defs.' Mem.; Pl.'s Opp'n; Defs.' Reply.

In connection with that briefing, Plaintiff filed a motion for leave to file a supplement to his Opposition on April 1, 2026, *see* Letter Motion for Leave to File Supplemental Authorities and Facts, Dkt. 15 ("Pl.'s First Supplement"), which the Court granted on April 3, 2026, *see* Order, dated Apr. 3, 2026. Between April 3 and 30, 2026, Plaintiff proceeded to file 15 additional supplements, letters, and notices, including motions for leave to file a sur-response, for a hearing and expedited consideration, and to compel clarification and extended preservation of records.[4] On May 14, 2026, the Court granted Plaintiff's motion for leave to file a sur-response "in light of his *pro se* status" and construed his motion for leave as containing his sur-response. Order, dated May 14, 2026. In doing so, the Court observed that Plaintiff had received leave to file only one of the supplements he had submitted and that the Court would "issue a decision on the papers, unless it determine[d] at a later date that a hearing [was] warranted." *Id.* The Court denied Plaintiff's other motions and directed Plaintiff to "refrain from filing 'notices' on the docket each time there is a discovery, Freedom of Information Act update, or settlement attempt." *Id.*

---

[4] *See* Notice of Preservation of Evidence and Litigation Hold, Dkt. 17; Plaintiff's Second Supplemental Letter in Further Opposition to Defendants' Motion to Dismiss, Dkt. 18; Plaintiff's Notice of Supplemental Administrative Record Facts, Dkt. 19; Plaintiff's Notice of Meet and Confer Regarding Preservation of Electronically Stored Information, Dkt. 20; Plaintiff's Supplemental Submission Regarding Relevant Medical Evidence, Dkt. 21; Plaintiff's Motion for Leave to File Sur-Reply and Proposed Sur-Reply in Further Opposition to Defendants' Motion to Dismiss, Dkt. 26 ("Pl.'s Second Supplement"); Plaintiff's Motion for Expedited Consideration, an Evidentiary Hearing, and Limited Testimony of Allan DeBoer, Dkt. 27; Plaintiff's Notice of Third Congressional Expedite Request and Continuing Pattern of Administrative Delay, Dkt. 28; Plaintiff's Notice of USCIS Closure of FOIA Appeal and New Development in Administrative Record, Dkt. 29; Plaintiff's Motion to Compel Clarification and Extended Preservation of Records, Dkt. 30; Plaintiff's Notice of Fresh FOIA Request Following Closure of Prior Appeal, Dkt. 31; Notice Regarding Plaintiff's Settlement Efforts and Defendants' Lack of Response, Dkt. 32; Plaintiff's Notice of USCIS Response to Fourth Congressional Inquiry Seeking FOIA Records Only and Continued Pattern of Administrative Non-Disclosure, Dkt. 33; Plaintiff's Supplemental Notice Requesting the Testimony of Quan K. Long at the Evidentiary Hearing, Dkt. 34; Plaintiff's Supplemental Notice of ELIS System Update and Relevant Administrative Pattern, Dkt. 35.

Nevertheless, on June 10, 2026, Plaintiff filed a third motion for leave to file a supplemental letter, *see* Plaintiff's Motion for Leave to File a Supplemental Factual Letter, Dkt. 38, which the Court denied for lack of good cause shown on June 12, 2026, *see* Order, dated June 12, 2026. The Court reminded Plaintiff that it would "issue a decision on the papers." Order, dated June 12, 2026.

On June 18, 2026, Plaintiff filed a motion for reconsideration of the Court's June 12, 2026, denial of leave. *See* Motion for Reconsideration. Between June 19, 2026, and July 9, 2026, Plaintiff then filed six supplements in further support of his Motion for Reconsideration, including a letter motion requesting a prompt ruling.[5]

Separately, the parties had a pre-settlement conference before Magistrate Judge Robert M. Levy on June 18, 2026, during which "[s]ettlement [was] explored in great detail" but was ultimately "impossible at [that] time." Minute Entry, dated June 18, 2026.

Between August 24, 2026, and September 18, 2026, Plaintiff filed two further supplements, without leave, in support of his motion to dismiss. *See* Plaintiff's Notice of Petition Pendency—443 Days—and Fifth Post-Briefing Change to Agency Processing-Time Framework, Dkt. 46; Plaintiff's Supplemental Notice of Petition Transfer to Field Office, Sixth Post-Briefing Processing-Time Change, and Approaching Statutory Milestones, Dkt. 47.

---

[5] *See* Plaintiff's Supplemental Submission in Support of Pending Motion for Reconsideration—Statistical Analysis of Defendants' Own Processing-Time Framework, Dkt. 40; Plaintiff's Second Supplemental Submission in Further Support of Pending Motion for Reconsideration—Further Post-Briefing Change in Agency Processing-Time Framework, Dkt. 41; Plaintiff's Amended and Supplemental Statement of Adjudicative Facts in Support of Pending Motion for Reconsideration (Dkt. 39), Dkt. 42; Plaintiff's Amended and Supplemental Statement of Adjudicative Facts and Mathematical Analysis in Support of the Pending Motion for Reconsideration (Dkt. 39), Dkt. 43; Plaintiff's Third Supplemental Submission in Support of Pending Motion for Reconsideration (Dkt. 39)—Additional USCIS Portal Data, Crossing of Historical National Median, USCIS Admission Regarding Processing Time Methodology and Pro Se Basis for Reconsideration, Dkt. 44; Plaintiff's Letter Motion for Prompt Ruling on Pending Motion to Dismiss (Dkt. 23) and Motion for Reconsideration (Dkt. 39), Dkt. 45.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject-matter jurisdiction must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

A motion to dismiss on jurisdictional grounds "may be either 'facial,' i.e., based solely on the allegations of the complaint and exhibits attached to it, 'or fact-based,' i.e., based on evidence beyond the pleadings." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (citation omitted). Facial attacks challenge the sufficiency of the pleading and, like a motion under Rule 12(b)(6), require the Court to accept all factual allegations in the complaint as true. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto."). Unlike a facial attack, a factual attack places the "jurisdictional facts [ ] in dispute[,]" *Harty*, 28 F.4th at 441, by "proffering evidence beyond the [p]leading[s][.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). In resolving factual attacks on jurisdiction, the Court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

**B. Rule 12(b)(6)**

Rule 12(b)(6) requires a district court to dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a complaint need not contain "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557).

**C. *Pro Se* Litigants**

A *pro se* complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Even after *Twombly*," the Court "remain[s] obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Nevertheless, the "basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (per curiam) (quoting *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004)).

**DISCUSSION**

Defendants argue that the Court should dismiss each of Plaintiff's claims under Rules 12(b)(1) and 12(b)(6). *See* Defs.' Mem. at 5-12. Plaintiff responds that he has adequately alleged both claims, *see* Pl.'s Opp'n at 12-16, and additionally moves for reconsideration of the Court's

June 12, 2026, order denying him leave to file another supplement in support of his opposition to Defendants' Motion to Dismiss, *see* Motion for Reconsideration at 1-4.

**A. Plaintiff's Mandamus Act Claim**

Beginning with Plaintiff's Mandamus Act claim, *see* Compl. at 4-5, Defendants argue that Plaintiff "cannot show that USCIS has a clear, non-discretionary duty to adjudicate his I-130 immediately" or that he lacks "another 'adequate remedy,'" Defs.' Mem. at 8; *see id.* at 8-9. Plaintiff responds that he has a clear right to mandamus relief, regarding which Defendants owe a nondiscretionary duty, and that Plaintiff otherwise has no adequate remedy at law. Pl.'s Opp'n at 12-14.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy," *Escaler v. USCIS*, 582 F.3d 288, 292 (2d Cir. 2009), "committed to the sound discretion of the [trial] court," *Pesantez v. Johnson*, 15-CV-1155 (BMC), 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) (quoting *Cartier v. Sec'y of State*, 506 F.2d 191, 199 (D.C. Cir. 1974)). To obtain relief under the Mandamus Act, a plaintiff must show that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008); *see Escaler*, 582 F.3d at 292.

Plaintiff has not plausibly alleged that he has a "clear right" to adjudication of or that Defendants have a "plainly defined and peremptory duty" to adjudicate his Form I-130 within any particular time frame. *Benzman*, 523 F.3d at 133. Plaintiff cites "three independent sources" in support of his argument:

- 8 U.S.C. § 1571(b), which provides, in pertinent part, that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application";
- 8 U.S.C. § 1154(b), which directs Defendants to investigate the facts alleged in a Form I-130; and
- 5 U.S.C. § 555(b), which requires federal agencies to "within a reasonable time . . . proceed to conclude a matter presented to it."

Pl.'s Opp'n at 12-13. However, as Defendants assert, *see* Def.'s Reply at 2-3, none of these provisions impose an enforceable right or mandatory timeline. Indeed, the second authority Plaintiff references—8 U.S.C. § 1154(b)—contains no such language at all. *See* 8 U.S.C. § 1154(b) ("After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) or 1153(b)(3) of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status."). Rather, at best, these provisions propose a recommended guideline. *See, e.g.*, *Lin v. Mayorkas*, 24-CV-01403 (RER), 2025 WL 1884304, at *2-3 (E.D.N.Y. July 7, 2025) (holding that there was no clear right to adjudication of or plainly defined, peremptory duty to adjudicate a Form I-130 within a specific timeframe under 8 U.S.C. § 1571(b) or 5 U.S.C. § 555(b)); *see also Edwards v. Garland*, 24-CV-7367 (RER), 2025 WL 2653828, at *3 (E.D.N.Y. Sep. 16, 2025) (reaching a similar conclusion); *Poz v. Mayorkas*, 23-cv-7902 (DLI), 2024 WL 4309234, at *3 (E.D.N.Y. Sep. 26, 2024) (referring to 8 U.S.C. § 1571(b) as "merely precatory" (quoting *Li v. Chertoff*, 07-CV-3836, 2007 WL 4326784, at *5 (E.D.N.Y. Dec. 7, 2007))). That is not enough to merit the "extraordinary" remedy of mandamus relief. *Escaler*, 582 F.3d at 292.

But even if Plaintiff could articulate a clear right to immediate adjudication of his Form I-130, or corresponding duty to immediately adjudicate his Form I-130, mandamus relief would still be inappropriate because Plaintiff fails to allege that no other adequate remedy is available. To the contrary, Plaintiff has demonstrated the availability of two alternative remedies: an "unreasonable delay" claim under the APA and an expedited request procedure via USCIS. *See* Compl. at 3-5; Pl.'s Opp'n at 13-14; *see, e.g.*, *Lin*, 2025 WL 1884304, at *3 (dismissing a mandamus claim involving a Form I-130 where claims under the APA and USCIS's expedited request procedure provided alternative remedies). This holds true even if Plaintiff's alternative claims fail on the merits. *See Zheng v. Garland*, 22-CV-6039 (AMD), 2024 WL 333090, at *5 (E.D.N.Y. Jan. 29, 2024) ("To the extent that the plaintiff's opposition suggests that filing an expedite request is an insufficient remedy because hers was rejected, this argument is not persuasive. Even if these remedies are not available because of the plaintiff's particular circumstances, 'an alternative adequate remedy would be possible under the APA' or the USCIS's expediting program." (citation omitted) (quoting *Sajib v. Renaud*, 21-cv-07039 (BMC), 2022 WL 1062319, at *2 (E.D.N.Y. Apr. 8, 2022), *withdrawn*, 21-cv-07039 (BMC), 2022 WL 1062319 (E.D.N.Y. Apr. 8, 2022))).

Accordingly, Plaintiff's Mandamus Act claim is dismissed.

**B. Plaintiff's APA Claim**

Next, Defendants argue that Plaintiff's APA claim should be dismissed because the alleged delay at issue is not undue and that the claim fails under the factors set forth in *Telecommunications Research and Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Defs.' Mem. at 9-12. Plaintiff responds that the *TRAC* factors "overwhelmingly favor[]" him, Pl.'s Opp'n at 14; *see id.* at 14-15, and that the delay is "unreasonable under any standard," *id.* at 15; *see id.* at 15-16.

The APA requires that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Federal courts have the power to "compel agency action" that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Here, too, there is no obligation to resolve an application on a particular schedule. *Lin*, 2025 WL 1884304, at *3. The "'mere passage of time' is insufficient." *Id.* (quoting *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 260 (E.D.N.Y. 2021)). To determine the reasonableness of the delay, the Court "look[s] to the source of delay – e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding," *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999), and to the *TRAC* factors, which are:

> (i) the time agencies take to make decisions must be governed by a rule of reason;
>
> (ii) where Congress has provided a timetable, it may supply content for this rule of reason;
>
> (iii) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (iv) the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (v) the nature and extent of the interests prejudiced by delay; and
>
> (vi) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80; *see Lin*, 2025 WL 1884304, at *3. A plaintiff need not "demonstrat[e] that all of these factors weigh in [their] favor" to prevail on an undue delay claim under the APA. *Mu v. USCIS*, 23-CV-02067 (HG), 2023 WL 4687077, at *4 (E.D.N.Y. July 22, 2023).

At the pleading stage, the Court's role is "'not determining whether there has been an unreasonable delay,' but rather, 'determining whether [a plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" *Kaur v. Mayorkas,* 22-Civ. 4514 (PAE), 2023 WL 4899083, at *5 n.6 (S.D.N.Y. Aug. 1, 2023) (quoting *Palakuru v.*

*Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)). The Court accepts as true the factual allegations in the Complaint and draws all reasonable inferences in Plaintiff's favor under the *TRAC* factors. *See id.*

**1. The First *TRAC* Factor: Rule of Reason**

As for the first *TRAC* factor, whether "the time agencies take to make decisions [is] governed by a 'rule of reason,'" *TRAC*, 750 F.2d at 80, Defendants argue that the factor favors them because "USCIS adjudicates applications 'in the order they are received.'" Defs.' Mem. at 11 (quoting *Poz*, 2024 WL 4309234, at *4). Plaintiff asserts that this rule is not applied in every case such that it cannot support dismissal. Pl.'s Opp'n at 14.

The first *TRAC* factor favors Defendants. "An agency's establishment of a logical system to prioritize and process applications is a rule of reason." *Lin*, 2025 WL 1884304, at *4. Courts in this District have held that such a "first in, first out" rule satisfies this factor. *See, e.g.*, *id.*; *Lin v. Garland*, 24-CV-2268 (RER) (RML), 2025 WL 277454, at *3 (E.D.N.Y. Jan. 22, 2025) (collecting cases).

Plaintiff's cited case, *In re Barr Laboratories, Inc.*, 930 F.2d 72 (D.C. Cir. 1991), is not to the contrary. Plaintiff references *In re Barr Laboratories* for the proposition that "[a] rule demonstrably not applied to Plaintiff's specific case cannot support dismissal." Pl.'s Opp'n at 14. However, *In re Barr Laboratories* does not support that assertion. Rather, the D.C. Circuit concluded that a rule of reason existed in that case and observed that "a finding that delay is unreasonable does not, alone, justify judicial intervention." *In re Barr Lab'ys*, 930 F.2d at 75. Moreover, *In re Barr Laboratories* concerned an application for approval of generic drugs, a factual scenario distinct from that at issue here, and was decided by a persuasive, but nonbinding, court.

Even taking judicial notice, as Plaintiff requests, of the 17-month wait time published publicly on the USCIS website that he references in his Opposition and accompanying supplements, *see* Pl.'s Opp'n at 8, 11; Pl.'s First Supplement at 2-3; Pl.'s Second Supplement at 3-4, Plaintiff's Form I-130 was pending for six months at the time Plaintiff commenced this action and has been pending for approximately 15 months to date. Courts in this District "have declined to find similar wait times unreasonable where these were less than average and median processing times." *Kaur*, 2023 WL 4899083, at *7 (collecting cases).

Accordingly, the first *TRAC* factor favors Defendants.

**2. The Second *TRAC* Factor: Congressional Timetable**

Turning to the second *TRAC* factor, which provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the first factor's] rule of reason," *TRAC*, 750 F.2d at 80, Defendants argue that "Congress has not provided a required timetable for adjudicating I-130s," such that this factor favors them. Defs.' Reply at 6. Plaintiff responds that his Form I-130 has been pending beyond the 180-day benchmark established in 8 U.S.C. § 1571(b) and that "[m]ultiple Congressional expedited requests were denied without documented individualized review." Pl.'s Opp'n at 14; *see* Compl. at 1-4.

The second *TRAC* factor favors Defendants. While Congress has proposed a 180-day timeline, *see* 8 U.S.C. § 1571(b), it is not required, as discussed above. *Lin*, 2025 WL 1884304, at *4. Rather, Congress has vested executive agencies with discretion in immigration processing. *Id.* Although courts have contemplated that a delay as long as Plaintiff's could be unreasonable, they have declined to rule in favor of applicants for the mere passage of time alone when an agency has articulated a rule of reason. *Id.*; *Lin*, 2025 WL 277454, at *3.

Plaintiff's cited case does not compel a contrary conclusion. Plaintiff references *Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001), for the proposition that 8 U.S.C. § 1571(b) establishes a "180-day expectation" and that "[m]ultiple Congressional expedite requests were denied without documented individualized review." Pl.'s Opp'n at 14. However, 8 U.S.C. § 1571(b) provides a guideline, rather than a mandatory timeline, which *Brower* did not address. Rather, *Brower* concerned an APA challenge of a finding by the Secretary of Commerce regarding the harm inflicted by tuna purse seine fishing on dolphin stocks in the Eastern Tropical Pacific Ocean. *See Brower*, 257 F.3d at 1060-64. Like *In Re Barr Laboratories*, *Brower* concerned a factual scenario distinct from that at issue here and was decided by a persuasive, but nonbinding, court.

**3. The Third and Fifth *TRAC* Factors: Health, Welfare, and Other Interests**

Turning to the third and fifth *TRAC* factors, whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay," which are often analyzed together, *TRAC*, 750 F.2d at 80; *Qi v. USCIS*, 1:23-cv-08843 (JLR), 2024 WL 2262661, at *6 (S.D.N.Y. May 17, 2024), Defendants argue that Plaintiff's cited hardships are largely inherent to the immigration process such that they do not meet the standard of health and welfare at stake, Defs.' Mem. at 11-12. In his Complaint, Plaintiff states that "[t]he delay has caused uncertainty regarding family reunification, family planning and employment. The prolonged separation has caused emotional distress, including anxiety and depression and disruption of familial and social stability." Compl. at 5. Plaintiff clarifies in opposition that he "suffers from pre-diabetes" and "high cholesterol" and that his "mother suffers from cardiovascular disease, diabetes, high cholesterol, hypertension, and memory loss." Pl.'s Opp'n at 14; *see* Pl.'s First Supplement at 5-6.

The third and fifth factors favor Defendants. While undoubtedly challenging, Plaintiff's cited hardships of delayed family reunification, planning, and employment, as well as emotional distress and disruption of familial and social stability, are largely inherent in the application process itself. Courts in this Circuit have held that similar allegations do not meet the standard of health and welfare being at stake. *See, e.g.*, *Sheiner v. Mayorkas*, 21-CV-5272 (ER), 2023 WL 2691580, at *9 (S.D.N.Y. Mar. 29, 2023) ("[A]llegations of uncertainty and delay do not amount to the showing other courts have held meets the standard of human health and welfare being at stake."); *Fang v. Gray*, 23-CV-06886 (OEM), 2025 WL 296531, at *5 (E.D.N.Y. Jan. 23, 2025) ("The Court is unable to evaluate Plaintiff's general statement of 'hardship and heartache' without more information or factual basis."); *De Oliveira v. Barr*, 19-CV-1508 (ENV), 2020 WL 1941231, at *5 (E.D.N.Y. Apr. 22, 2020) ("The fact that the plaintiffs experience 'anxiety and emotional distress' could just as easily be true for every other noncitizen whose asylum application has been delayed. Therefore, an order in favor of the plaintiffs would . . . result[] in no net gain.").

Plaintiff's specific cited health conditions, moreover, do not plausibly allege prejudice caused by the processing delay. *See, e.g.*, *Kaur*, 2023 WL 4899083, at *10 (collecting cases and noting that, in cases where courts have found these factors met it is because plaintiffs were able to plausibly allege "individualized risks the delay had caused"). Rather, Plaintiff merely lists chronic health conditions and asserts, in a conclusory fashion, that "[t]hese documented, individualized conditions are directly traceable to USCIS's inaction." Pl.'s Opp'n at 14-15; *see* Pl.'s Second Supplement at 2.

In his supplements, Plaintiff further clarifies that his mother, who is a U.S. citizen, with chronic health conditions of atherosclerotic disease, umbilical hernia, diabetes, cataracts, hypertension, cholesterol, and thyroid disease, would benefit from his wife's "female support in

the household." Pl.'s First Supplement at 5-6; *see* Pl.'s Second Supplement at 2. As Defendants contend, this difficult scenario arguably stems from the same family separation inherent in the immigration application process. Def.'s Mem. at 11-12. Even if these allegations did sufficiently establish *TRAC* factors three and five in Plaintiff's favor, however, they do not outweigh the remaining *TRAC* factors, discussed throughout.

Further, Plaintiff's cited cases, *see* Pl.'s Opp'n at 15 (first citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983); and then citing *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977)), are inapt. *Motor Vehicle Manufacturers Association* analyzed whether an order of the National Highway Traffic Safety Administration was arbitrary and capricious under the APA, *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, while *Moore* considered whether a housing ordinance violated the Due Process Clause of the U.S. Constitution's Fourteenth Amendment, *Moore*, 431 U.S. at 496. Neither of these cases address the scenario presented here: administrative delay in processing an immigration application. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Moore*, 431 U.S. at 496.

Accordingly, the third and fifth *TRAC* factors favor Defendants.

**4. The Fourth *TRAC* Factor: Consequences of Expediting Agency Action**

As for the fourth *TRAC* factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, Defendants argue that "Plaintiff does not offer an argument as to why this factor favors him, nor does he dispute that he is asking this Court to leapfrog his pending I-130—which is well within posted processing times—ahead of other applicants waiting longer simply because he filed a lawsuit." Defs.' Reply at 8. Instead, Defendants contend that Plaintiff believes prioritizing his application should happen because other applicants "have already been leapfrogged ahead of [him]." *Id.* Defendants assert that "USCIS's

decision to make exceptions to its general rule, to, for example, process applications with approved expedite requests, is within its purview and expertise" and that "ordering USCIS to move Plaintiff's petition to the head of the . . . line would interfere with the agency's 'authoritative' position to 'allocate its resources in the optimal way.'" *Id.* (quoting *N-N*, 540 F. Supp. at 263). In response, Plaintiff asserts that "[t]here is no orderly queue to protect" and that "[g]ranting relief corrects an existing arbitrary departure from any rational processing order." Pl.'s Opp'n at 15; *see* Pl.'s First Supplement at 3-4; Pl.'s Second Supplement at 4-5.

Plaintiff's argument is not persuasive. Courts have routinely dismissed undue delay claims when the requested relief would "simply jump[] one plaintiff to the front of the line and push[] everyone else further back." *Yang v. Houghton*, 21-cv-5485 (BMC), 2021 WL 5879033, at *1 (E.D.N.Y. Dec. 13, 2021); *see, e.g.*, *De Oliveira*, 2020 WL 1941231, at *5; *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 224-25 (E.D.N.Y. 2021). Although Plaintiff asserts he is not asking to jump the line, *see* Pl.'s Second Supplement at 4-5, that would, in effect, be the outcome of a decision in his favor, and Plaintiff does not cite any authority in support of his position that he should be prioritized at this juncture. *See* Pl.'s Opp'n at 15; Pl.'s Second Supplement at 4-5.

As such, the fourth *TRAC* factor favors Defendants.

* * *

In sum, the *TRAC* factors do not favorably support Plaintiff's claim for unreasonable delay. Therefore, the Court finds that Plaintiff fails to state a claim under the APA.

### C. Plaintiff's Motion for Reconsideration

Lastly, Plaintiff moves for reconsideration of this Court's June 12, 2026, order denying him leave to file a further supplement in support of his opposition to Defendants' Motion to Dismiss due to a lack of good cause shown. *See generally* Motion for Reconsideration; Order,

dated June 12, 2026. Plaintiff argues that reconsideration is warranted to include "communication with USCIS" regarding the "current processing-time estimate, and the continuing humanitarian impact of delay." Motion for Reconsideration at 3.

A party seeking reconsideration must meet a "strict" standard. *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). To succeed, a movant must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). In other words, a litigant must raise "matters . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

Here, Plaintiff focuses on the availability of new evidence. Motion for Reconsideration at 2-3. But the evidence Plaintiff raises is not material; rather, it provides further support for the arguments already made in his opposition to Defendants' Motion to Dismiss and supplements that the Court granted him leave to file. Even if the Court were to grant Plaintiff's request, his "new facts," *id.* at 2, do not change the outcome of the Court's decision for the reasons discussed above, *cf. Trombetta v. Novocin*, 18-CV-993 (RA), 2022 WL 280986, at *1-2 (S.D.N.Y. Jan. 31, 2022) (denying a motion for reconsideration where permitting the *pro se* plaintiff's sur-reply would not have changed the outcome of the Court's motion to dismiss).

Accordingly, Plaintiff's Motion for Reconsideration is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted, and Plaintiff's Motion for Reconsideration is denied. Accordingly, Plaintiff's Complaint is dismissed without prejudice to refile if there is a continued delay and Plaintiff is able to state additional facts or causes of action.

The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

September 23, 2026
Brooklyn, New York